**Opinion issued August 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00667-CV

————————————

## IN RE CHRISTUS HEALTH GULF COAST (AS AN ENTITY, D/B/A CHRISTUS ST. CATHERINE HOSPITAL, AND FORMERLY D/B/A CHRISTUS ST. JOSEPH HOSPITAL), Relator

---

**Original Proceeding on Petition for Writ of Injunction and Prohibition**

---

## MEMORANDUM OPINION

Relator, CHRISTUS Health Gulf Coast (as an Entity, *d/b/a* CHRISTUS St. Catherine Hospital, and formerly *d/b/a* CHRISTUS St. Joseph Hospital) ("Christus"), seeks a writ of injunction/prohibition preventing Linda Carswell, Jordan Carswell, and Justin Carswell (collectively, "the Carswells") from obtaining

Jerry Carswell's heart-tissue samples from SJ Medical Center, LLC ("SJ Medical") for the purpose of burying the samples with Jerry.

We deny the petition for writ of injunction/prohibition.

**Additional Background Facts**

The factual and procedural history of this case from the date Jerry Carswell was admitted to CHRISTUS St. Catherine Hospital ("St. Catherine") on January 19, 2004, until the date the trial court entered its amended final judgment on March 29, 2011, is detailed in our opinion in *Christus Health Gulf Coast v. Linda G. Carswell*, appellate cause number 01-11-00292-CV. The following facts are relevant solely to this original proceeding.

After the trial court entered its original final judgment—but before it entered its amended final judgment—Carswell requested that Dr. Jeffrey Terrel and SJ Associated Pathologists, L.C. ("SJAP") return the remains of Jerry Carswell that they still had in their possession, namely, his heart tissue, for burial. Dr. Terrel and SJAP rejected this request based on the contention of Christus's counsel that the heart tissue could potentially become relevant evidence if the either the trial court or this Court granted Christus a new trial. In response, Carswell's counsel sent a letter to Dr. Terrel and SJAP's counsel advising him that if the parties could not come to a "satisfactory arrangement" for the return of Jerry's remains, Carswell "[would] seek injunctive relief to prevent any further irreparable injury."

2

Christus's counsel responded that Christus objected to the release of Jerry's heart tissue "if [the release] will result in the destruction of those samples or would otherwise render such samples unsuitable for testing/inspection prior to the conclusion of this litigation." According to Christus, "the appropriate course of action would be to defer consideration of Mrs. Carswell's request until all appeals are concluded and the potential relevance of Mr. Carswell's heart tissue samples is finally determined by the courts."

On January 31, 2012, Carswell filed a petition pursuant to Rule of Civil Procedure 202, seeking discovery from SJ Medical, the current owner of St. Joseph Hospital ("St. Joseph"), concerning the whereabouts of Jerry's remains. Carswell stated that SJ Medical "is a third party against whom suit is not contemplated at this time, and from whom [she] seeks discovery." Carswell asserted that she was the lawful owner of any autopsy specimens and that no other person or entity has the legal right to retain any of the specimens. Carswell requested an oral deposition of an SJ Medical representative to discover "the state of knowledge of SJ [Medical] concerning possession, custody or control of the remains of Jerry Carswell, deceased" and "the manner of preservation and safe-keeping of the pathological specimens and/or remains, including the heart, of Jerry Carswell, deceased."

SJ Medical opposed the Rule 202 petition, arguing that there was no dispute that Jerry's retained tissues were located on the premises of St. Joseph. SJ Medical expressed its concern that Carswell's Rule 202 petition "serve[d] no other purpose than to establish facts to support a subsequent lawsuit against St. Joseph" and it requested that the trial court deny Carswell's petition.

Christus's counsel subsequently sent a letter to SJ Medical's counsel "to make clear that St. Catherine and Dr. [Terrel] object to the release of Mr. Carswell's heart tissue samples to [Carswell's] counsel because it is potentially violative of existing court orders" and because the release might result in "the destruction of those samples or otherwise render[] them unsuitable for testing/inspection, [which] would potentially constitute spoliation of evidence." Christus's counsel reiterated Christus's position that the appropriate course of action was to maintain the tissues at St. Joseph until all appeals are concluded; and he requested that, if SJ Medical decides to release the tissues to Carswell, it let him know in advance so Christus could take "appropriate action."

On June 25, 2012, the trial court held a hearing on the Rule 202 petition. Carswell's counsel stated that he, Christus's counsel, and Dr. Terrel and SJAP's counsel had reached "an understanding" after the previous trial that they would "move forward" in returning Jerry's remains to Carswell. To this end, Carswell made preparations to exhume Jerry's body and bury his remains. In response to

4

counsel for SJ Medical stipulating on the record that the tissues were located at St. Joseph's premises, Carswell's counsel stated that he would withdraw the Rule 202 petition and send a demand letter to SJ Medical with an offer of settlement, offering to release SJ Medical from any liability if it turned over the tissues. He stated that if SJ Medical rejected this offer, he would sue for conversion.

On July 5, 2012, Carswell's counsel sent a letter to SJ Medical's counsel stating the following:

> Despite repeated demands for return of her husband's remains, we have been 'stonewalled' by CHRISTUS, who refuses to recognize Mrs. Carswell's right to receive her husband's remains in derogation of law and the trial judgment vitiating the consent for autopsy. Your client, SJ, is in the middle of this dispute as the possessor of Jerry Carswell's remains. However, as possessor, you have so far refused to return the heart specimens to Mrs. Carswell despite repeated demands. You instead follow the instructions from CHRISTUS not to turn over the heart specimens to Mrs. Carswell when there is no authority for you to do so. I have informed you that I believe your client's refusal to turn over the heart specimens to Mrs. Carswell constitute[s] conversion, and may give rise to other cognizable causes of action.

> This letter is being written to give your client one last opportunity to do the right thing—release to Linda Carswell the heart specimens of her deceased husband without further delay. If you do so within seven (7) days from the date of this letter, my client agrees to release SJ from any and all claims, causes of action, etc. in connection with its possession of Jerry Carswell's remains. . . .

> In the event we [cannot] reach a mutually satisfactory settlement of this dispute in the time frame stated, I will have no recourse but to file suit on behalf of Linda Carswell against SJ, as the possessor of her deceased husband's remains. The suit will seek damages, declaratory relief, equitable relief, costs and attorney's fees.

On July 17, 2012, Christus's counsel responded, acknowledged Carswell's position that the heart tissue did not constitute potentially relevant evidence, and proposed the following stipulations to resolve the issue:

1. The heart tissue, if inspected would reveal a discolored portion of tissue as described by Dr. Terrel.

2. The heart tissue could be tested, and any test performed on the heart tissue would be as reliable as if it were performed during the autopsy.

3. If the heart tissue were tested, those tests would reliably confirm that Mr. Carswell's death was caused solely by a heart attack and sudden cardiac arrhythmia, unrelated to the administration of any pain medications.

4. If the heart tissue were tested, those tests would reliably confirm that Mr. Carswell's death was not caused by respiratory distress or depression.

5. The retained portion of the heart is not the entire heart, but only a portion of heart as described by Dr. Terrel in his trial testimony.

The trial court took no action on Carswell's Rule 202 petition. Christus then filed this petition for writ of injunction/prohibition in this Court.

### Propriety of Writ of Injunction/Prohibition

We have the power to issue a writ of mandamus "and all other writs necessary to enforce the jurisdiction of the court." TEX. GOV'T CODE ANN. § 22.221(a) (Vernon 2004); *see also* TEX. R. APP. P. 52.1 (listing writ of prohibition and writ of injunction as examples of original appellate proceedings that may be heard in court of appeals).

6

A writ of prohibition directs a lower court to refrain from doing a particular act. *See In re Richardson*, 252 S.W.3d 822, 830 (Tex. App.—Texarkana 2008, orig. proceeding) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 676 n.4 (Tex. 1996)). This writ enables a superior court to protect and enforce its jurisdiction and judgments, and this writ is "typically used to protect the subject matter of an appeal or to prohibit an unlawful interference with the enforcement of a superior court's orders and judgments." *Id.* at 831 (quoting *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 683 (Tex. 1989)). Similarly, the purpose of a writ of injunction is to enforce or protect our jurisdiction. *In re Olson*, 252 S.W.3d 747, 747 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (per curiam); *In re Sheshtawy*, 161 S.W.3d 1, 1 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (per curiam). We may grant injunctive relief "if a failure to do so would result in the appeal becoming moot and the subject matter being destroyed." *Becker v. Becker*, 639 S.W.2d 23, 24 (Tex. App.—Houston [1st Dist.] 1982, no writ). We do not have jurisdiction to issue a writ of injunction "merely for the purpose of preserving the status quo or to prevent loss or damage to one of the parties during the appeal." *Id.*; *see also In re Gruebel*, 153 S.W.3d 686, 689 (Tex. App.—Tyler 2005, orig. proceeding) (stating same).

In the related case of *Christus Health Gulf Coast v. Linda G. Carswell*, appellate cause number 01-11-00292-CV, we determined that the trial court

7

appropriately rendered judgment against Christus on Carswell's post-mortem fraud claim. Although we modified the award of prejudgment interest and vacated the imposition of $250,000 in monetary sanctions against Christus, we affirmed the merits of the judgment against Christus. In doing so, we noted that the trial court's exclusion of heart-related evidence pursuant to its sanctions order did not affect our conclusion that sufficient evidence supported the jury's verdict on Carswell's post-mortem fraud claim, and, thus, Christus failed to establish that the non-monetary sanctions imposed against it caused it any harm. Carswell did not appeal the adverse jury finding on her "pre-mortem" health care liability claims, the claims to which the heart tissues were directly relevant. It is therefore not necessary to issue either a writ of injunction or prohibition to enforce or protect our jurisdiction over the appeal or to prevent an appeal pending before us from becoming moot.

## Conclusion

We deny the petition for writ of injunction/prohibition. We lift the temporary stay entered in this case on July 25, 2012.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.

8